GALL *v.* SOVEREIGN CAMP OF THE WOODMEN OF THE WORLD.

1. INSURANCE — DEFENSES — INTOXICATING LIQUORS — FRATERNAL BENEFICIARY ASSOCIATIONS.

Although it appeared by undisputed evidence that the insured, holding a fraternal benefit policy, had used intoxicating liquors more than three years before his application for the certificate, and there was testimony from which it might be inferred that he had used the same during the three years preceding the issuance of his policy, that contained a provision that if the insured should become so far intemperate from the use of intoxicants as to produce delirium tremens, or die as a direct result of drinking, the certificate should be void, under contradicted testimony showing that he had delirium tremens and died as a direct result of drinking intoxicating liquors, the defendant's liability was for the jury.

2. SAME—FRAUD.

Also it was for the jury to determine whether his statement made in his application, that he did not use liquors and had never been intoxicated, was false.

3. SAME—INTOXICATION—WORDS AND PHRASES—CHARGE.

Neither a definition of intoxication as a condition created by the use, to such an extent, of intoxicating liquors, that it affected the mental or physical powers of insured, nor an instruction that intoxication meant excited to frenzy, was proper in charging the jury.

Error to Wayne; Donovan, J.    Submitted June 16, 1911.    (Docket No. 82.)    Decided September 29, 1911.

Assumpsit by Gertrude Gall against the Sovereign Camp of the Woodmen of the World on a benefit certificate.    Judgment for plaintiff.    Defendant brings error. Reversed.

*Beaumont, Smith & Harris,* for appellant.

*John H. Dohrman* and *James A. Murtha,* for appellee.

In his application for a certificate in defendant beneficiary society, John K. Gall answered certain questions as follows:

"Do you now use wine, spirits or malt liquors?    No. If so, what kind and average amount per day.    (No answer.)

"Were you ever intoxicated?    No.    If so, when.    (No answer.)

"Have you ever taken a liquor cure?    No.    If so, when and where.    (No answer.)"

By the terms of the application, the answers to questions therein are warranted to be true, the certificate refers to and is based upon the said warranties, and it is a condition referred to and made a part of the certificate that if the member shall become so far intemperate from the use of intoxicating liquors as to produce delirium tremens or dies as a direct result of the drinking of intoxicating liquors, or if any of the statements or declarations in the application shall be found in any respect untrue, the certificate shall be void and all benefits thereunder forfeited without notice.    The certificate is dated February 17, 1908, the benefit payable to the plaintiff.    Gall, who was 43 years old, died October 18, 1908.

With its plea defendant gave notice that it would show in its defense, among other things, the untruthfulness of the answers to the first two questions referred to, and that John K. Gall, after receiving the said certificate, became

"so far intemperate from the use of intoxicating liquors as to produce delirium tremens and did die from the direct results of the drinking of intoxicating liquors." The trial resulted in a verdict and judgment for plaintiff. A motion for a new trial, one ground of which was that the verdict was contrary to the weight of evidence, was overruled. Exceptions taken and errors assigned and relied upon by the appellant present the contentions:

(1) The court should have directed a verdict for defendant.

(2) The charge of the court was erroneous.

(3) A new trial should have been granted.

OSTRANDER, C. J. (*after stating the facts*). 1. The undisputed testimony was that after the certificate was issued deceased used intoxicating liquors. It is not very clear whether he used liquor for three years immediately before the certificate was issued; before the three-year period he used liquors. We think the testimony does not conclusively prove either that he used liquor at the time the application was made, that he had before that time been intoxicated, that he had delirium tremens, or that he died as a direct result of drinking intoxicating liquors. Therefore the court was not in error in submitting the case to the jury.

2. The charge to the jury is rather confusing. They were told that the burden was upon defendant to prove that false answers were made by the applicant, or that he died of delirium tremens or as the direct result of the use of intoxicating liquors. Favorable to defendant was the instruction that, if the answer that he had never been intoxicated was untrue, there must be a verdict for defendant. Equally favorable to defendant was an instruction that, if the insured in fact used liquor at the time he made his application for the certificate, there could be no recovery. There was an instruction to the effect that if the insured had delirium tremens, induced by intemperate use of liquor, there could be no recovery, and the same

verdict was required if the insured died as the direct
result of drinking liquor.

"Intoxication" was defined as a condition of a man
whose physical and mental powers are affected by the use
of intoxicating liquors. Other portions of the charge were
unfavorable to defendant. For example, the court said:

"I charge you that the term 'intoxicated' is defined in
Webster's Unabridged Dictionary as 'inebriated,' 'made
drunk,' 'excited to frenzy.' You see it is a pretty strong
definition when you get it right down to the intoxication."

In another portion of the charge occurs the statement:

"Now the real hinge and turn of the case is: Did he
die from the direct cause of alcoholism? That is really
the question we are here for, and we will take that up in
a moment and see if we can find out. A wise man has
said: 'Tell me what life is, and I will tell you what death
is.' But it is a pretty hard matter to define, unless we
have a post mortem examination, unless we are present
when it happened. It comes in so many different ways,
it is complicated in so many different forms, that a good
doctor is often puzzled to know whether it is heart failure,
or kidney trouble, or diabetes, or typhlitis, or some clog,
or some shock, or some serpent in the brain that drops a
poison and ends life. It is a difficult matter to tell, and
laymen can rarely tell. I mean where death comes as it
came in this case. It comes in a hospital. Comes with-
out the doctor being there, at the last; it comes after-
wards by a coroner's certificate. Now the real question
is: Did it come in this case by liquor, did it come from
that alone? Now, finding a bottle of whisky in a man's
room alone would not be evidence that the man died from
that whisky. And especially that might be true of a man
with the complaint that the man had suffered from, like
la grippe, where he might have used it sometimes during
the sickness. All that a man hath will he give for his life.
He will struggle in the end, and he will use all the means
he may find in reach."

Finally, the jury was instructed in these words:

"Now, gentlemen, you can do a good duty, today, be-
cause you know more about this case than anybody else,
and because we have hundreds all over the State; yes, at

least even in this county 9,000 in some of these. You can do a good duty by doing exact justice between these parties. It is entirely for you to decide."

We are not satisfied with either definition of "intoxication" given in the charge—one most favorable, and the other most unfavorable, to the defendant. For the favorable definition given, defendant is responsible, because the instruction was requested. The question, "Were you ever intoxicated?" in an application for insurance, ought not to be treated as asking whether at any time the applicant had taken liquor with any perceptible effect upon either his mental or physical powers. Nor should it be held to be the equivalent of the question, "Were you ever excited to frenzy by drink?" The testimony tended strongly to sustain each of defendant's contentions, and especially the one that the insured had been many times, if not commonly, intoxicated before he made the application. We are therefore constrained to hold that in giving the definition of the word intoxicated unfavorable to defendant reversible error was committed.

There is considerable argument in the charge, most of it favorable to plaintiff. Other questions debated in the briefs are not likely to arise upon a new trial, and therefore are not discussed.

The judgment is reversed, and a new trial granted.

BIRD, BROOKE, BLAIR, and STONE, JJ., concurred.